IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VISUALS UNLIMITED, INC.,

        Plaintiff,

v.

PEARSON EDUCATION, INC.,

        Defendant.

CIVIL ACTION
NO. 13-5681

**OPINION**

**Slomsky, J.**                                                                                                        April 10, 2014

## I.    INTRODUCTION

On September 28, 2013, Visuals Unlimited, Inc. ("VU" or "Plaintiff") filed a Complaint against Pearson Education, Inc. ("Pearson" or "Defendant"), based on Defendant's alleged misuse of photographs in various educational materials. (Doc. No. 1.) VU is a stock photography licensing agency which licensed photos to Pearson, a publisher of educational textbooks. In the original Complaint, Plaintiff raised the following claims against Defendant: Copyright Infringement (Count I); Contributory Copyright Infringement (Count II); Fraud (Count III); Breach of Contract (Count IV); and Breach of the Covenant of Good Faith and Fair Dealing (Count V). (Id.)

On December 2, 2013, Defendant moved to dismiss Counts II, III and V of the Complaint. (Doc. No. 10.) Thereafter, Plaintiff filed an Amended Complaint, dropping the claims for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing. (Doc. No. 11.) In light of the Amended Complaint, the Court denied Defendant's Motion to Dismiss without prejudice as moot. (Doc. No. 12.)

In the Amended Complaint, Plaintiff asserts the following claims against Defendant: Copyright Infringement (Count I);[1] Contributory Copyright Infringement (Count II); and Fraud (Count III). (Doc. No. 13.) On January 9, 2014, Defendant filed a second Motion to Dismiss, seeking dismissal of Counts II and III of the Amended Complaint. (Doc. No. 14.) A hearing on the Motion was held on March 10, 2014. The Motion is now ripe for disposition.[2]

## II. BACKGROUND

The following facts are taken from the Amended Complaint and must be accepted as true for purposes of the Motion to Dismiss. Plaintiff is a stock photography licensing agency which is an owner, creator, and copyright holder of various stock photographs. (Doc. No. 13 at ¶ 6.) Defendant publishes educational textbooks and obtained licenses to print Plaintiff's photos in certain publications. (Id. at ¶ 10.) Plaintiff alleges that Defendant misused its photos in the following ways:

- Defendant printed more photos than certain licenses permitted. (Id. at ¶ 15.)
- On some occasions, Defendant printed Plaintiff's photos without any approval whatsoever. (Id. at ¶ 16.)
- Defendant reproduced and distributed photos to third parties without Plaintiff's permission. (Id. at ¶ 27.)

Plaintiff alleges the following examples of the first misuse:

---

[1] In Count I of the Complaint, Plaintiff alleges that Defendant violated the Copyright Act of 1976, 17 U.S.C. § 501, et seq., by misusing Plaintiff's stock photos.

[2] In rendering this Opinion, the Court has considered the following: Defendant's Motion to Dismiss (Doc. No. 14), Plaintiff's Response in Opposition (Doc. No. 15), Defendant's Reply in Further Support of the Motion (Doc. No. 17), the arguments of counsel for the parties made at a hearing on the Motion held on March 10, 2014, and the supplemental briefs submitted by the parties (Doc. Nos. 20-21).

>Pearson licensed to print 170,000 copies of images, including [VU's] images, in *Biology,* by Campbell and Reece, Sixth Edition.  It printed 728,478.
>
>Pearson licensed to print 100,000 copies of images, including [VU's] images, in *Triumph,* Grade 3.  It printed 679,859.
>
>Pearson licensed to print 300,000 copies of images, including [VU's] images, in *Scott Foresman Science,* Grade 2.  It printed 529,213.
>
>Pearson licensed to print 200,000 copies of images, including [VU's] images, in *Scott Foresman Science,* Grade 3.  It printed 354,847.

(Id. at ¶ 20A-D.)  According to Plaintiff, when Defendant requested specific, limited licenses to use certain pictures, it "often knew its actual uses under the licenses would exceed the usage rights it was requesting and paying for."  (Id. at ¶ 11.)  By misrepresenting how many copies it would actually print, Defendant intended "to obtain access to the Photographs at a lower cost than it would have paid had it been honest in its dealings . . . ."[3]  (Id. at ¶ 13.)

In addition to exceeding licensing terms and printing photos without permission, Plaintiff also alleges that Defendant facilitated copyright infringement by third parties.  Defendant promotes the international distribution of its publications, in part, through its international rights management group ("IRMG").  (Id. at ¶ 26.)  IRMG's mission is "to maximize the number of translations and local versions published that are based upon products of Pearson Education," and IRMG "arranges for approximately 4,000 third-party licenses annually, which includes translations in approximately 50 languages read around the world."  (Id.)

According to Plaintiff, Defendant reproduced and distributed, without permission, Plaintiff's pictures to other entities, subsidiary companies, divisions, and/or affiliates.  (Id. at ¶ 27.)  Those third parties then translated the Pearson textbooks into additional languages,

---

[3] Plaintiff alleges that it "relied to its detriment on the truthfulness of the express limitations contained in Pearson's license requests in establishing VU's license fees."  (Doc. No. 13 at ¶ 14.)

3

published them in local adaptations, and/or included Plaintiff's pictures without authorization.

(Id. at ¶ 28.)  Plaintiff provides the following examples of this activity:

> Pearson reproduced and distributed Photographs it obtained from [VU] to its affiliates, Pearson Studium and Pearson Education Deutschland GMBH, for use in a German-language publication, *Biochemie,* without [VU's] permission.
> ***
> Pearson reproduced and distributed Photographs it obtained from [VU] to Pearson Studium and Pearson Education Deutschland GMBH for use in a German-language publication, *Okologie,* without [VU's] permission.
> ***
> Pearson reproduced and distributed Photographs it obtained from [VU] to Pearson Studium and Pearson Education Deutschland GMBH for use in a German-language publication, *Chemie,* without [VU's] permission.

(Id. at ¶¶ 28A-C.)  Plaintiff alleges that by transmitting the photographs to these third parties without authorization, Defendant enabled, induced, caused, facilitated, or materially contributed to their unauthorized reproduction and distribution of the photos.  (Id. at ¶ 29.)  When it did so, Defendant knew that the third parties would be reproducing and distributing pictures without Plaintiff's permission.  (Id. at ¶ 31.)  Plaintiff alleges that Defendant had the right and the ability to control the third parties' use of the pictures and was paid for transmitting these photos to the third parties.  (Id. at ¶¶ 33-34.)

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV.   ANALYSIS

Plaintiff brought this action based on Defendant's alleged misuse of the stock photographs. Plaintiff asserts that Defendant exceeded usage rights that it requested and paid for

5

by reprinting more pictures than certain licenses permitted.  Plaintiff also contends that Defendant "enabled, induced, caused, facilitated, or materially contributed to the . . . unauthorized reproduction and distribution of the photographs" by third parties.  (Doc. No. 13 at ¶ 29.)  In the Motion to Dismiss, Defendant seeks dismissal of Counts II and III of the Amended Complaint, which allege contributory copyright infringement and fraud, respectively.  For reasons that follow, the Court will deny Defendant's Motion to Dismiss.

      A.     **The Contributory Copyright Infringement Claim Has Been Sufficiently Pled In The Amended Complaint**

In Count II of the Amended Complaint, Plaintiff alleges that Defendant is liable for contributory copyright infringement.  (Doc. No. 13 at 11-12.)  To successfully plead a claim of contributory copyright infringement, Plaintiff must allege: (1) direct copyright infringement by a third party; (2) knowledge of the defendant that the third party was directly infringing; and (3) defendant induced, caused, encouraged or materially contributed to the infringement.  Parker v. Google, Inc., 242 Fed. App'x 833, 837 (3d Cir. 2007).  See also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005); Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984).  Defendant contends that Plaintiff has failed to adequately plead the second and third prongs necessary to establish a claim for contributory infringement.  (Doc. No. 14-1 at 12-20.)

With respect to the second prong, Defendant argues that Plaintiff failed to plead any factual basis for its belief that Defendant knew that third parties were reproducing and distributing photos without Plaintiff's permission.  (Id. at 14-15.)  In the Amended Complaint, Plaintiff alleges the following facts on the knowledge requirement of prong

6

two: "Upon information and belief, Pearson knew when it reproduced and distributed the Photographs that the Third Parties would reproduce and distribute the Photographs without Plaintiff's authorization.  Upon information and belief, Pearson knew that the Third Parties were reproducing and distributing Plaintiff's Photographs without authorization."  (Doc. No. 13 at ¶¶ 31-32.)  Defendant contends that these pleadings are insufficient because Plaintiff has not set forth any factual basis for its belief that Defendant knew that third parties were reproducing Plaintiff's pictures without permission.

At least one other federal district court has recognized that "[t]he sufficiency of this pleading is a close question on which federal district courts have diverged when assessing similar complaints."  <u>Muench Photography, Inc. v. Pearson Educ., Inc.</u>, No. 13-3937, 2013 WL 6172953, *5 (N.D. Cal. Nov. 25, 2013).  Some district courts have found that pleadings with similar language are sufficient to survive a Motion to Dismiss.  <u>See, e.g.</u>, <u>Bavendam v. Pearson Educ., Inc.</u>, No. 13-3096, 2013 WL 5530008, *5 (D.N.J. Oct. 3, 2013); <u>StockFood Am., Inc. v. Pearson Educ., Inc.</u>, No. 12-0124, 2012 WL 5986791, *6 (D. Me. Nov. 29, 2012).  In view of this line of cases, at this stage before discovery, Defendant is seeking to impose too great a burden on Plaintiff.  Because this is a close question, and because the Court must accept Plaintiff's factual allegations as true, the Court is satisfied that Plaintiff has sufficiently alleged that Defendant knew about the third party infringement, thereby satisfying prong two of the claim.

With respect to the third prong of Plaintiff's contributory copyright infringement claim, Defendant contends that Plaintiff failed to allege facts which demonstrate that Defendant materially contributed to the alleged third party infringement.  As an initial matter, Plaintiff need not plead that Defendant materially contributed to the infringement.  Instead, Plaintiff may satisfy the third prong of a contributory infringement claim by alleging that Defendant induced,

7

caused or encouraged the third party infringement.  <u>Grokster</u>, 545 U.S. at 930; <u>Columbia Pictures</u>, 749 F.2d at 160.  Plaintiff has set forth the following allegations that support the third prong of its claim for contributory copyright infringement:

> Upon information and belief, Pearson reproduced and distributed the Photographs without [VU's] permission to other entities, subsidiary companies, divisions, affiliates, and/or third parties ("Third Parties"). Upon information and belief, the reproductions and distribution took place in the United States.
> \* \* \*
> By transmitting the photographs to the Third Parties without [VU's] permission, Pearson enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution of the photographs.
>
> Upon information and belief, Pearson permitted Third Parties to distribute Pearson's publications containing the Photographs in new territories, to translate its publications into new languages, and to adapt its publications for distribution in additional territories.

(Doc. No. 13 at ¶¶ 27, 29-30.)  Defendant contends that these allegations fail to set forth a factual basis for the belief that Defendant engaged in these activities.  Again, Defendant is putting too great a burden on Plaintiff at this stage of the litigation.

As noted above, in support of these claims, Plaintiff has alleged in the Amended Complaint three examples of Defendant reproducing and distributing Plaintiff's photos to its foreign affiliates without Plaintiff's permission:

> Pearson reproduced and distributed Photographs it obtained from [VU] to its affiliates, Pearson Studium and Pearson Education Deutschland GMBH, for use in a German-language publication, *Biochemie,* without [VU's] permission.
> \*\*\*
> Pearson reproduced and distributed Photographs it obtained from [VU] to Pearson Studium and Pearson Education Deutschland GMBH for use in a German-language publication, *Okologie,* without [VU's] permission.
> \*\*\*
> Pearson reproduced and distributed Photographs it obtained from [VU] to Pearson Studium and Pearson Education Deutschland GMBH for use in a German-language publication, *Chemie,* without [VU's] permission.

(Id. at ¶ 28A-C.) Accepting these factual allegations as true, the Court is satisfied that Plaintiff has sufficiently alleged that Defendant induced, caused, encouraged or materially contributed to copyright infringement by certain third parties, thereby satisfying the third element of contributory copyright infringement.

Defendant argues further that Plaintiff's claim for contributory infringement should be dismissed because Plaintiff's allegations are directly contradicted by certain documents attached to the Amendment Complaint. Defendant contends that Plaintiff's exhibits establish that Defendant's foreign affiliates repeatedly sought and obtained permission from Plaintiff to use its pictures in additional publications. (Doc. No. 14-1 at 15.) Defendant argues that the numerous examples of foreign affiliates licensing images directly from Plaintiff undermine Plaintiff's allegations of contributory copyright infringement. (Id. at 16.) This argument is not persuasive. The fact that some foreign affiliates may have sought and obtained permission to use pictures on certain occasions does not negate Plaintiff's allegations that Defendant reproduced and distributed photos to other foreign affiliates on different occasions, without Plaintiff's authorization. The Court will not dismiss Plaintiff's claim at this stage of the litigation without the benefit of discovery on this dispute. For the reasons above, Plaintiff has sufficiently alleged a cause of action for contributory copyright infringement.

**B.   The Fraud Claim Has Also Been Sufficiently Pled In The Amended Complaint**

In addition to seeking dismissal of Count II of the Amended Complaint, Defendant seeks to dismiss Count III, which encompasses Plaintiff's fraud claim. In Count III, Plaintiff alleges that Defendant committed a fraud when it negotiated licenses with Plaintiff, knowing that "its actual uses under the licenses would exceed the usage rights it was requesting and paying for." (Doc. No. 13 at ¶ 11.) Defendant has made four arguments as to why this claim should be

9

dismissed: 1) Plaintiff's fraud claim is barred by the gist of the action doctrine; 2) Plaintiff's fraud claim is barred by the economic loss doctrine; 3) Plaintiff fails to adequately allege fraud damages; and 4) Plaintiff fails to plead fraud with requisite particularity. (Doc. No. 14-1 at 4-12.) The Court will briefly discuss each argument.

### i. Plaintiff's Fraud Claim is not Barred by the Gist of the Action Doctrine

Defendant first contends that Plaintiff's fraud claim is barred by the gist of the action doctrine. (Doc. No. 14-1 at 4-6.) "Generally, the gist-of-the-action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 718 (Pa. Super. Ct. 2005). While the Pennsylvania Supreme Court has not expressly adopted this doctrine, the Superior Court of Pennsylvania has repeatedly held that the gist of the action doctrine forecloses tort claims: "1) arising solely from a contract between the parties; 2) where the duties allegedly breached were created and grounded in the contract itself; 3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (internal quotations omitted); Indalex, Inc. v. Nat'l Union Fire Insur. Co., 83 A.3d 418, 425 (Pa. Super. Ct. 2013) (quotation omitted). This doctrine operates to preclude a plaintiff from re-characterizing standard breach of contract claims as tort actions. Indalex, 83 A.3d at 425 (quoting Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc., 9 A.3d 1207, 1212 (Pa. Super. Ct. 2010) (quotation omitted)).

As an initial matter, Plaintiff is not pursuing any breach of contract claim. Plaintiff does not allege that Defendant breached the terms of the various licensing agreements. Instead, Plaintiff seeks relief based on Defendant's alleged copyright infringement and fraud. However,

Defendant asserts that Plaintiff's fraud claim is actually a breach of contract claim in disguise and is therefore barred by the gist of the action doctrine. (Doc. No. 14-1 at 6.) In determining whether Plaintiff's fraud claim is barred by the gist of the action doctrine, "the central analysis is whether the [fraud] claim is based on contractual duties, or conversely, whether the contract is collateral to a tort claim that is based on duties imposed by 'larger social policies embodied in the law of torts.'" <u>Mirizio v. Joseph</u>, 4 A.3d 1073, 1084 (Pa. Super. Ct. 2010) (quoting <u>Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.</u>, 247 F.3d 79, 105 (3d Cir. 2001)).

Plaintiff's fraud claim is not based on Defendant's failure to perform contractual duties. For example, Plaintiff does not allege that Defendant failed to pay for the licenses which it sought and obtained from Plaintiff. Instead, Plaintiff argues that Defendant perpetrated a fraud during negotiations, prior to the formation of any contract between the parties. According to Plaintiff, "Pearson engaged in a fraudulent scheme of requesting limited licenses, while intending to exceed those limits, in order to obtain the licenses at a lower cost and to conceal its copyright infringement." (Doc. No. 15 at 12.)

Moreover, this case does not present a situation where Plaintiff's fraud claim should be barred by the gist of the action doctrine under the four circumstances described above in the <u>eToll</u> case. 811 A.2d at 19. First, Plaintiff's fraud claim does not arise from a contract between the parties; it arises instead from the negotiations preceding the licensing agreements. Second, as noted above, Plaintiff does not allege that Defendant breached any contractual duties. Third, Defendant's liability does not stem from a contract. Rather, Plaintiff asserts that Defendant is liable for alleged misrepresentations it made while the parties negotiated photo licenses. Fourth, Plaintiff's fraud claim does not duplicate a breach of contract claim, as Plaintiff has not made such a claim. Furthermore, in two factually similar cases, the district court held that fraud claims

of the photography agencies were not barred by the gist of the action doctrine when the plaintiffs alleged that the defendants intentionally requested permission to print fewer photos than they actually intended to print, inducing the plaintiffs to set licensing fees at lower costs. Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc., No. 11-1665, 2012 WL 1138615, *7 (E.D. Pa. Mar. 30, 2012); Degginger v. Houghton Mifflin Harcourt Pub. Co., No. 10-3069, 2010 WL 3491358, *1 (E.D. Pa. Sept. 2, 2010).  This is precisely what Plaintiff has alleged in its Amended Complaint, and the Court agrees that Plaintiff's fraud claim is likewise not barred by the gist of the action doctrine in this instance.

### ii. Plaintiff's Fraud Claim is not Barred by the Economic Loss Doctrine

Next, Defendant contends that Plaintiff's fraud claim is barred by the economic loss doctrine. (Doc. No. 14-1 at 6-7.)  "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).  While the Pennsylvania Supreme Court has not ruled on whether the economic loss doctrine bars fraud claims, the Third Circuit has predicted that the Pennsylvania Supreme Court would apply the doctrine to bar these claims. Werwinski, 286 F.3d at 681.  Defendant contends that because the Amended Complaint fails to allege any harm independent of the harm that flows from its alleged breach of the licenses, Plaintiff's fraud claim is barred by the economic loss doctrine.  The Court is not persuaded by this argument.  First and foremost, Plaintiff has not alleged that Defendant breached the licensing agreements, or any other contract for that matter.  Instead, Plaintiff is alleging that Defendant committed a fraud when it negotiated licenses to permit the printing of a certain number of

photos when it knew that it would print photos exceeding the limits of those licenses. Therefore, Plaintiff is not seeking to recover damages that flow only from a contract.

Second, the district court's decision in <u>Wood v. Houghton Mifflin Harcourt Publ'g Co.</u>, 589 F. Supp. 2d 1230 (D. Colo. 2008) persuasively applies here. In <u>Wood</u>, the plaintiff, a professional photographer, sold the defendant six licenses which authorized the defendant to publish no more than 40,000 copies of the textbook or magazine in which the plaintiff's copyrighted photographs appeared. <u>Id.</u> at 1235. The plaintiff alleged that the defendant infringed on his copyright by printing and publishing significantly in excess of 40,000 copies. <u>Id.</u> The plaintiff also alleged that the defendant committed fraud when it requested the licenses, knowing that it would publish far more than the 40,000 authorized copies. <u>Id.</u> at 1249. At the summary judgment stage, the district court considered whether the plaintiff could demonstrate that the defendant's fraud caused harm that was distinct from the harm caused by the copyright infringement. <u>Id.</u> a 1251-52.

Although the court did not consider the economic loss doctrine and whether the alleged fraud damages were actually damages that stemmed from the breach of a contract, the court in <u>Wood</u> explained that "the harm from fraud would be the lost opportunity to the copyright holder from having its rightful licensing fee up front and in the absence of litigation, as well as the significant risk that the infringement might never have been discovered." <u>Id.</u> at 1252. In the Amended Complaint, Plaintiff alleges similar harm. According to Plaintiff, it "bill[ed] Pearson at a lower rate than it would have if Pearson had been honest about its expected print runs." (Doc. No. 13 at ¶ 12.) For these reasons, the economic loss doctrine does not operate to bar Plaintiff's fraud claim.

13

### iii. Plaintiff Sufficiently Alleges Fraud Damages

Similar to the argument regarding the economic loss doctrine, Defendant contends that Plaintiff's fraud claim should be dismissed because Plaintiff fails to allege fraud damages that are independent from the losses it sustained as a result of the alleged misuse of photos and copyright infringement. (Doc. No. 14-1 at 7-8.) Defendant argues that Plaintiff cannot demonstrate the necessary cause and effect relationship between the alleged fraud and the damages sought. (Id. at 7.) However, for the same reasons discussed above, the Court is satisfied that Plaintiff has adequately pled damages which stem from Defendant's alleged fraud. Plaintiff alleges that it billed Defendant at a rate lower than it would have billed if Defendant had revealed how many copies of textbooks it actually intended to print. (Doc. No. 13 at ¶ 12.) Accepting this fact as true at this stage of the litigation, Plaintiff has sufficiently alleged fraud damages.

### iv. Plaintiff Pled its Fraud Claim with Requisite Particularity

Finally, Defendant makes a catchall argument and contends that Plaintiff failed to plead fraud with requisite particularity pursuant to Federal Rule of Civil Procedure 9(b). (Doc. No. 14-1 at 8-12.) Rule 9(b) imposes a heightened pleading standard on plaintiffs who raise claims that sound in fraud.[4] In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 (3d Cir. 2006). Rule 9(b) specifically provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

---

[4] When a plaintiff's "claims are not grounded in allegations of fraud, the liberal notice pleading requirements of Rule 8 apply[,]" and Rule 9(b) is not triggered. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006). See also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007).

Fed. R. Civ. P. 9(b). Pursuant to this Rule, "a plaintiff alleging [a fraud claim] must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)). To satisfy the pleading requirements of Rule 9(b), "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. (citing Lum, 361 F.3d at 224).

While this Rule may appear to be stringent, district courts in "[t]his Circuit ha[ve] . . . been relatively flexible in [their] application of Rule 9(b)." Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc., No. 05-3362, 2007 WL 174710, *2 (D.N.J. Jan. 22, 2007). In fact, the Third Circuit has explained that "in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). While "[i]t is certainly true that allegations of 'date, place or time' fulfill these functions, . . . nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

Nevertheless, Defendant contends that Plaintiff's fraud claim falls short of the pleading requirements of Rule 9(b). (Doc. No. 14-1 at 10.) To state a claim for fraud under Pennsylvania law, Plaintiff must allege the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)

justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).  Defendant contends that, as pled, Plaintiff's fraud claim is defective in three ways:

> First, the Amended Complaint fails to identify any specific statement by Pearson that could be characterized as a misrepresentation.
> \*\*\*
> Second, as to the required elements of knowledge and intent to mislead, the Amended Complaint is entirely devoid of factual support.
> \*\*\*
> Third, the Amended Complaint fails to allege any facts giving rise to a plausible inference that [Plaintiff] justifiably relied on Pearson's alleged misrepresentations.

(Doc. No. 14-1 at 10, 11, 12.)  The Court will briefly discuss each argument.

First, the Court is satisfied that Plaintiff has set forth various statements that, accepted as true and construed in a light most favorable to Plaintiff, can be construed as representations that Defendant would not print more than the licenses allowed.  According to Plaintiff, "Exhibit 2 [attached to the Amended Complaint] sets forth the identities of the persons making the misrepresentations; the time, place and content of the misrepresentations; and the method by which the misrepresentations were communicated to Visuals Unlimited." (Doc. No. 13 at ¶ 11.) The Court has reviewed numerous documents attached as Exhibit 2.  Construing these documents in the light most favorable to Plaintiff, statements made by Pearson representatives therein could reasonably be viewed as representations that Pearson would not exceed the requested licenses by printing more than the specified number of copies.  For example, Exhibit 2 includes, inter alia, the following letters from Pearson representatives:

- A letter dated October 3, 2000 from Karen Taylor at Pearson Education Canada, requesting to license certain photographs for a limited print run of 40,000. (Ex. B, Doc. No. 13-5 at p.32.)

- Two separate letters dated December 27, 2000 from Robin Clark at Pearson Education in Massachusetts, requesting to license certain photographs for a limited print run of 40,000-

100,000.  The letters also contain a statement that "[t]he photograph(s) . . . will not be re-used in any publication without permission."  (Ex. B, Doc. No. 13-6 at pp.35, 39.)

The three letters include the name of the Pearson representative requesting the license, the date the license was requested, the photographs that were sought and the quantities of the print run.  Moreover, in two letters, Defendant expressly represented that it would not re-use the photos without permission.  While Plaintiff did not specifically identify which requests included the alleged misrepresentations, at this stage of the litigation, the Court is satisfied that Plaintiff has pled the first element of a fraud claim with the requisite particularity.

Defendant also challenges the allegations in the Amended Complaint as failing to comply with the third and fourth prongs of the fraud claim.  According to Defendant, the Amended Complaint does not contain any factual support that shows Defendant's knowledge and intent to mislead. (Doc. No. 14-1 at 11.)  In relevant part, the Amended Complaint provides that "[a]t the time Pearson represented to Visuals Unlimited that it needed specified, limited licenses to use the Photographs, Pearson often knew its actual uses under the licenses would exceed the usage rights it was requesting and paying for." (Doc. No. 13 at ¶ 11.)  In addition, Plaintiff alleges that "Pearson intended by its misrepresentations to obtain access to the Photographs at a lower cost than it would have paid had it been honest in its dealings with Visuals Unlimited and to conceal the copyright infringements that followed." (Id. at ¶ 13.)  Defendant contends that these conclusory statements are insufficient to satisfy Rule 9(b).  (Doc. No. 14-1 at 12.)  The Court disagrees.

In the Amended Complaint, Plaintiff provides specific examples of occasions in which Defendant printed more photos than the licenses permitted.  For instance:

> Pearson printed 384,473 copies of *Biology: Concepts and Connections*, 5th Edition (2006), a textbook containing VU-licensed images. Pearson therefore knew and expected it would print at least as many copies of the next edition of

17

> this textbook, *Biology: Concepts and Connections*, 6th Edition (2009). Yet, when preparing to print [the new edition], Pearson sought licenses to print only 100,000 copies of VU Photographs in its billing request dated August 11, 2008. As a result, VU issued licenses for 100,000 reproductions of the Photographs via its Invoice No. 35217 dated August 20, 2008, billing Pearson at a lower rate than it would have if Pearson had been honest about its expected print runs. On November 12, 2008, Pearson sent VU an additional request for billing for [the new edition], this time increasing the license limit by 100,000 additional printed copies for a total of 200,000. In response VU issued the appropriate licenses via its Invoice No. 35422 dated November 17, 2008, again billing Pearson at a lower rate than it would have if Pearson had been honest. Pearson eventually printed 412,885 copies of *Biology: Concepts and Connections*, 6th Edition (2009), more than double what it had licensed.

(Doc. No. 13 at ¶ 12.)

Accepting these facts as true, Defendant printed 212,885 more copies than the licenses allowed. Moreover, construing all inferences from these facts in the light most favorable to Plaintiff, it can be inferred that this scenario demonstrates that Defendant knew it would need to print more than 200,000 photos because it had previously printed 384,473 copies of the former edition. This fact, and the large quantity of photos that were printed without a license, makes it reasonable to infer that Defendant intended for Plaintiff to rely on its representation that only 200,000 reproductions were needed. This specific allegation, and the others like it,[5] satisfies the Court that Plaintiff has sufficiently pled the knowledge and intent elements of its fraud claim.

Lastly, Defendant challenges Plaintiff's pleadings with regard to the justifiable reliance prong of its fraud claim. In relevant part, the Amended Complaint alleges that "Visuals Unlimited relied to its detriment on the truthfulness of the express limitations contained in Pearson's license requests in establishing VU's license fees." (Doc. No. 13 at ¶ 14.) According to Defendant, this pleading is too conclusory and not particular enough to satisfy Rule 9(b). The Court disagrees. In the factual allegation cited above, Plaintiff clearly relied on Defendant's

---

[5] See Doc. No. 13 at ¶¶ 20A-D.

representation that it would only produce 200,000 copies of the textbook because Plaintiff only issued licenses to cover that amount. Accepting this fact as true, it is reasonable to infer that Plaintiff was harmed by this reliance, since more than 400,000 textbooks were actually printed. This fact is enough to give rise to a plausible inference of Plaintiff's justifiable reliance on Defendant's representations. Therefore, the Court is satisfied that Plaintiff has sufficiently alleged this element of its fraud claim.

## V.     CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss will be denied. Plaintiff has adequately alleged claims for contributory copyright infringement and fraud.